# Nininger *v.* Norwood.

*Bill in Equity for Injunction and Abatement of Nuisance.*

1. *Private nuisance; jurisdiction of equity to abate; verdict and judgment at law.*—The jurisdiction of a court of equity to enjoin a private nuisance, at the suit of a person thereby aggrieved, compelling its abatement, is well established; and when the legal title of the party complaining is clear and undoubted, it is not necessary that his right should be first established by a verdict and judgment at law.

2. *Same; adequacy of legal remedies.*—When the injury complained of is permanent, continuous, or constantly recurring, though there may be a remedy at law, it is obviously inadequate; and the interference of a court of equity is necessary, to prevent irreparable injury and a multiplicity of suits.

3. *Same; easement for flow of waters from upper lands upon lower.* When two adjacent tracts of land belong to different persons, the upper or dominant tract has a natural easement or servitude in the lower, for the discharge of all waters falling or accumulating from natural causes on the surface; and any interference with this right, or obstruction of it, by the owner of the lower tract, by the erection of an embankment on his own land, whereby the waters are thrown back upon the upper tract, or their natural flow obstructed, is a private nuisance which a court of equity will enjoin and abate.

4. *Same; limitation of action or suit.*—By analogy to the statute of limitations at law barring an action for the recovery of lands (Code, § 2900), ten years is a bar in equity to a suit which seeks to enjoin and abate an embankment on land as a private nuisance to the owner of the adjacent upper lands.

5. *Husband's assent to embankment causing damage to wife's lands.* The assent of the husband to the construction or continuance of an embankment on adjacent lands, causing continuous injury to his wife's land, can not bar or preclude her from maintaining a suit in equity to enjoin and abate it.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 8th May, 1878, by Mary R. Norwood, a married woman, suing by her husband as next friend and trustee, against John Nininger, A. R. Nininger, and James Magee; and sought to enjoin and abate an embankment and certain ditches, which the defendants had con-

structed on lands belonging to them, and by which, as the bill
alleged, the water falling on complainant's lands, and naturally
emptying into a stream called "Lake creek," was obstructed,
dammed up, and thrown back on her lands, after every heavy
rain-fall, destroying her crops, and permanently injuring her
lands; also, an account of the damages thereby caused to the
complainant's lands, and the condemnation of the defendants'
lands to the satisfaction of the amount of damages thus ascer-
tained. According to the allegations of the bill, there were
two embankments, with connecting ditches, of which complaint
was made; one constructed in 1862, by N. L. Brooks, who af-
terwards sold and conveyed his lands to the Niningers, and the
other in December, 1877, by the defendants; and it was alleged,
as to each of these, that they were made without the consent
of the complainant, her husband, or her trustee, and against
their remonstrance and protest, and were maintained and re-
paired by the defendants without such consent. The bill
alleged, also, the insolvency of N. L. Brooks, and of each of
the defendants.

The defendants jointly demurred to the bill, for want of
equity, because the complainant had not established her right
by a judgment at law, and because she had an adequate remedy
at law. John Nininger afterwards died, and the suit was abated
as against him. The other defendants filed a joint answer, in
which they alleged that the ditch mentioned in the bill, and
said to have been dug by N. L. Brooks, was in fact dug and
kept open by said N. L. Brooks and his father, John W. Brooks
(who was also the complainant's father, and who then owned
the lands afterwards conveyed to her), for the purpose of ena-
bling them to reclaim and cultivate the swamp lands through
which the creek flowed; that in 1867, when N. L. Brooks sold
and conveyed his lands to the respondents, he conveyed a small
parcel, containing about five acres, to James H. Norwood, the
complainant's husband, in consideration of his covenant to keep
this ditch open and in proper repair; that this contract between
N. L. Brooks and Norwood "was well known to complainant,
and to her said trustee, who was a witness thereto, and was
sanctioned and approved by her as a proper act of her husband
in her behalf;" that the complainant and her husband "failed
to keep clear the said eight-foot ditch, as said Norwood con-
tracted to do, and said ditch so dug by respondents, which runs
parallel with said eight-foot ditch and about thirty yards distant,
was necessary to drain off the water which said former ditch
was intended to drain; that no more water is now thrown upon
complainant's lands than was thrown on them by said eight-foot
ditch; and these respondents deny that any injury whatever

[Nininger v. Norwood.]

results to complainant's lands on account of said ditch complained of, or by any act or omission of these respondents."

The chancellor overruled the demurrer to the bill, and, on final hearing on pleadings and proof, decreed as follows: "The complainant is not entitled to relief, so far as the old levee built by Brooks is concerned. The evidence shows that this levee and ditch follows pretty nearly what is called the 'run' of the old lake, and the complainant's testimony does not satisfactorily show that said levee, and repairs upon it, have been injurious to her land by throwing back the water upon it. As to the levee thrown up by the respondents, on the east side of the ditch dug by Nininger, commencing at the sixteen-foot ditch, and extending southerly to a point near the Brooks ditch and the public road, the court is of opinion that complainant is entitled to relief. It appears to the court that said levee obstructs the natural flow of the water from complainant's land, which flows naturally in a north-east direction, and causes the water, in times of freshets, to stand longer upon her lands than it would otherwise do. Said levee is decreed to be a nuisance, and it must be abated; and the respondent Nininger is ordered to abate and take away said levee thrown up by him, so that it shall no longer obstruct the flow of water, within ninety days from this date." The chancellor declined to estimate the damages, but ordered an issue to be submitted to a jury to determine the damages.

The defendants appeal from this decree, and here assign as error the overruling of their demurrer to the bill, and that part of the final decree granting relief to the complainant; and there is a cross-assignment of error by the complainant, on account of the refusal to grant any relief as against the old levee and ditch constructed by Brooks.

WILLIAMSON & COOK, for the appellants.—(1.) The right of an owner of land to occupy and improve it in such manner as he may see fit, either by changing the surface, or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated, with reference to that of adjoining owners, that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface, or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities, or in other directions than they were accustomed to flow. The right of a person to the free and unfettered control of his own land, above, upon, and beneath the surface, can not be interfered with, or restrained, by any considerations of injury to

others, which may be occasioned by the flow of mere surface water, in consequence of the lawful appropriation of land by its owner to a particular use, or mode of enjoyment; nor is it material, in the application of this principle, whether a party obstructs or changes the direction and flow of surface water, by preventing it from coming within the limits of his own land, or by erecting barriers, or changing the level of the soil, so as to turn it off in a new course on his own lands. A party may improve his own lands, although he may thereby cause the surface water, whencesoever it may come, to pass off in a different direction, and in larger quantities than before.—*Gannon v. Hargadon*, 10 Allen, Mass. 106; *Goodale v. Tuttle*, 29 N. Y. 459; *White v. Chapin*, 12 Allen, Mass. 516; and other cases cited in Angell on Water-Courses, 7th ed., 119–22; also, *Taylor v. Fichas*, 64 Indiana, 167. (2) The husband's assent to the cutting of the ditches, and his approval of the work, was a full protection to the defendants against the complaint of the wife. As husband and trustee he had the full control and management of his wife's property, and the right to receive the rents, income and profits, without liability to account; and the wife can not repudiate or complain of his acts, while he continues her trustee. If the ditches injured the crops on the land, the husband alone could complain of it; and his consent took away his right of action, if any accrued to him.

W. R. HOUGHTON, and WATTS & SONS, *contra.*—(1.) By the old Roman law, all lands were burdened with the servitude of receiving and discharging the waters arising from natural causes, which naturally flowed down to them from higher lands.—Addison on Torts, 70–71. That this is the law in this country, see *Hooper v. Wilkinson*, 15 La. Ann. 497; *Gillman v. Railroad Co.*, 49 Illinois, 484; *Livingston v. McDonald*, 21 Iowa, 160; *Laumier v. Francis*, 23 Mo. 181; *Martin v. Riddle*, 26 Penn. St. 415; *Butler v. Peck*, 16 Ohio St. 334; *Bellows v. Sackett*, 15 Barb. 96; *Griesemer v. Kaufman*, 26 Penn. St. 407; *Nevins v. Peoria*, 41 Illinois, 502; 30 N. Y. 519; 12 Minn. 451; 17 Texas, 688; 4 Geo. 241; *Rudd v. Williams*, 43 Ill. 385; *Greensdale v. Halliday*, 6 Bing. 379. (2.) When Nininger bought from Brooks, the lands were charged with this servitude, and he took them subject to it.—*Mayor v. Coleman*, 58 Ala. 570; *Mayor v. Jones*, 58 Ala. 654. (3.) As to the embankment and ditch constructed by Brooks, the complainant's right of action would only be barred by the lapse of twenty years, which would raise the presumption of a grant.—Angell on Water-Courses, § 201; *Polly v. McCall*, 37 Ala. 29; *Ricord v. Williams*, 7 Wheaton, 107; *American Co. v. Bradford*, 27 Cal. 367; *Williams v. Nelson*, 23 Pick. 144. (4.) That the

[Nininger v. Norwood.]

complainant pursued the proper remedy, and that she was not concluded by the assent or conduct of her husband, is settled by the case of *Thomas v. James*, 32 Ala. 723.

BRICKELL, C. J.—The original bill was filed by Mrs. Mary R. Norwood, a married woman, owning a plantation, partly as a statutory, and partly as an equitable separate estate, to enjoin the defendants, who own an adjoining plantation, from continuing thereon levees, or embankments, causing waters to flow back upon the lands of the complainant, which, following their natural outlet, had always flowed therefrom over the lands of the defendants. The material averments of the bill are: That a stream, known as " Lake Creek," runs through the plantation of Mrs. Norwood. In times of heavy rains, large quantities of water escaping over the banks of this stream, upon the lands of complainant, with the accumulations of rain water, have a natural outlet therefrom over the lands of the defendants. To prevent these waters from flowing over and flooding their lands, the defendants have erected embankments, or levees, which cause them to flow back and accumulate upon the lands of the complainant, rendering them less fit for cultivation, and in other respects injuring them.

The manifest theory upon which the bill proceeds is, that the lands of the defendants are burdened with the servitude of receiving and discharging the waters flowing down to them from the lands of the complainant. If that theory can be maintained, the bill presents a clear case for the interference of a court of equity. The jurisdiction of the court to enjoin the erection, or the continuance of private nuisances, compelling their abatement, at the instance of a party aggrieved, is well established. When the legal right of the party complaining is clear and undoubted, and the wrong is not susceptible of adequate compensation in damages recoverable in an action at law, or is in its very nature and character continuous and constantly recurring, the interference of the court is necessary, to prevent irreparable injury and a multiplicity of suits. There is, in the contemplation of the court, a very just distinction between injuries in their nature temporary and fugitive, and injuries permanent, continuous, constantly recurring. In reference to temporary injuries, the intervention of the court may depend upon the adequacy of legal remedies. But, when the injury is permanent, continuous, constantly recurring, there may be a remedy at law, but its inadequacy is obvious. The court of law can not restore the party complaining to the condition in which he was before the wrong was done, and in which he has the legal right to remain unmolested; nor can it, by removing the cause, prevent the necessity for multiplied litiga-

tion.—Wood on Nuisances, 812; High on Inj. §§ 501, *et seq.* Assuming that complainant has the clear legal right asserted, the defendants have invaded it, by obstructing the natural flow of the waters, causing them, in times of heavy rains, to flow back and accumulate upon the land of the complainant, submerging crops, interrupting cultivation, and deteriorating the fertility of the soil. The injury is permanent, continuous, and is of recurrence in all rainy seasons. It is irreparable injury, as that term is employed in a court of equity, for which legal remedies will not afford adequate redress, and against which a court of equity only can afford relief and protection.—Wood on Nuisances, 817. Nor, if the right of the complainant is clear —if, as matter of law, the lands of the defendants are burdened with the servitude claimed—is it essential that, as a condition precedent to the interference of the court, the right should have been established by a verdict and judgment at law. Substantial, actual injury has resulted, and there can be no necessity for sending the party to a court of law for the determination of a mere legal question, compelling submission to the wrong during the pendency of the action.—*Gardner v. Newburgh,* 2 Johns. Ch. 162; *Holman v. Boiling Spring Bleaching Co.,* 14 N. J. Eq. (1 McCarter) 335.

The remaining, and more important question, involved in the demurrer to the bill, is the existence of the right asserted by the complainant. Whether, as the owner of the land upon which the waters escaping from the creek in times when it is swollen by heavy rains, with the waters accumulating by the fall of rain, the complainant has a natural easement in the lands of the defendants, to the extent of the natural flow of these waters from her land, to and upon the lands of the defendants, is the controlling, decisive question. In *Hughes v. Anderson,* 68 Ala. 280, we considered the right of the owner of an upper parcel of lands to collect and concentrate the waters falling or originating upon his lands, increasing the flow, and discharging them in greater volumes upon the lower parcel. Following the case of *Kauffman v. Griesemer,* 26 Penn. St. 407, we held, that the owner of the upper or superior heritage had not the right to create new channels for the water falling or originating upon his lands, but that he could improve his lands, though the volume of water discharged by its accustomed channels was thereby increased. There are many interesting questions of growing importance, connected with the general subject of the rights of adjoining proprietors as to water falling or originating upon lands, but we confine our consideration to the single question the case presents.

The doctrine of the civil law is, that the owner of the upper or dominant estate has a natural easement or servitude in the

[Nininger v. Norwood.]

lower or servient one, to discharge all waters falling or accumulating upon his land, which is higher, upon or over the land of the servient owner, as in a state of nature; and that such natural flow or passage of the waters can not be interrupted or prevented by the servient owner, to the detriment or injury of the estate of the dominant or any other proprietor. The doctrine is repudiated in some of the American courts, and it is asserted that the doctrine of the common law is, that there exists no such natural easement or servitude in favor of the owner of the superior or higher ground as to mere surface water; and that the owner of the inferior or lower estate may, if he choose, lawfully obstruct or hinder the natural flow of such water thereon, and, in so doing, may turn the same back upon, or off, or to, or over the lands of other proprietors, without liability for injuries occurring from such obstruction or diversion.—3 Wait's Actions and Defenses, 711; Angell on Water-Courses, §§ 108 *et seq.* (7th ed). In England, the rule seems firmly adhered to, that lands are burdened with the servitude of receiving and discharging all waters that naturally flow down to them from the lands of an adjoining proprietor upon a higher level. Any interference with, or obstruction of the servitude by the lower owner, to the injury of the owner of the dominant estates, subjects him to liability for the resulting damage.—Wood on Nuisances, 422. This rule, with an exception, *perhaps,* as to town or city lots, is followed generally in this country.—*Gillman v. Madison R. R. Co.,* 49 Ill. 484; *Adams v. Walker,* 34 Conn. 466; *Kauffman v. Griesemer,* 26 Penn. St. 406; *Miller v. Lanbach,* 47 *Ib.* 154; *Ogburn v. Comer,* 46 Cal. 346; *Butler v. Peck,* 16 Ohio St. 334; *Watts v. Clifton,* 22 *Ib.* 247; *Swett v. Cutts,* 50 N. H. 439.

In the very carefully considered case of *Butler v. Peck,* said Brinkerhoff, J., " The principle seems to be established and indisputable, that when two parcels of land, belonging to different owners, lie adjacent to each other, and one parcel lies lower than the other, the lower one owes a *servitude* to the upper, to receive the water which *naturally* runs from it, providing the industry of man has not been used *to create the servitude.* Or, in other words more familiar to the students of the common law, the owner of the upper parcel of land has a *natural easement* in the lower parcel, to the extent of the natural flow of water from the upper parcel to and upon the lower." And again it was said : " The natural easement arises out of the relative altitudes of adjacent *surfaces* as nature made them, and these altitudes may not be artificially changed to the damage of an adjacent proprietor." In *Martin v. Riddle,* reported in a note to *Kauffman v. Griesemer, supra,* it is said by Lowrie, J.: " Where two fields adjoin, and one is lower than the other, the lower must necessarily be subject to all the natural flow of water

[Nininger v. Norwood.]

from the upper one. The inconvenience arises from its position, and is usually more than compensated by other circumstances; hence the owner of the lower ground has no right to erect embankments, whereby the natural flow of the water from the upper ground shall be stopped; nor has the owner of the upper ground a right to make any excavations or drains, by which the flow of water is diverted from its natural channel, and a new channel made on the lower ground; nor can he collect into one channel waters usually flowing off into his neighbor's fields by several channels, and thus increase the waste upon the lower fields." And in the case of *Kauffman v. Griesemer*, Woodward, J., said: "Almost the whole law of water-courses is founded in the maxim of the common law, *Aqua currit, et debet currere*. Because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement, for the discharge of all waters which by nature rise in, or flow or fall upon the superior."

These parties, complainant and defendants, acquired the lands with full knowledge of their natural relations, and that from the one parcel, because of its altitude, and because water is in its nature descendible, the bursts of water from the creek in freshets, and the accumulations of rain water, had and found a natural outlet over the immediately adjacent lower lands. Whatever of advantage to the one, or of inconvenience to the other, resulted from the natural formation of the lands, entered into the consideration of the acquisition; and there can be no justice in suffering one party to increase his advantages, or to lessen his inconveniences, at the expense, and to the injury of the other. There can not be interminable contests between them as to the lessening or increasing the burdens nature has imposed. Either may improve his own parcel, so long as he keeps within a just application of the maxim, *Sic utere tuo, ut lædas non alienum*. The demurrer to the bill was not well taken, and was properly overruled.

There is more of seeming than real conflict in the evidence. The principal facts are not left in doubt or uncertainty. The inclination of the lands of the defendants is to the north-east, and to the south-west lie the lands of the complainant. The natural outlet for the water falling upon the lands of the complainant, and of the water originating thereon in the bursts of the creek in freshets, is over the lands of the defendants. These facts are uncontroverted, and the owners of these lands have for a long time been endeavoring to lessen the injury to them resulting from the natural flow of the waters. The first embankment or levee which is complained of, styled in the pleadings and the evidence the "ten-foot ditch," has been constructed by the defendant across the natural channel and direc-

[Nininger v. Norwood.]

tion of these waters, extending for a distance of about seven hundred and fifty yards, retarding the natural flow of the water, raising it higher, and keeping it longer upon the lands of the complainant. We concur in the opinion of the chancellor, that the embankment or levee ought to be abated; that it is of continuous and constantly recurring injury to the complainant. As forming part of this embankment, must be included the embankment running north from the the hills, leaving the curve at the crossing of the running stream, as these objects are mentioned in the evidence, and indicated in the plat or map exhibited to the witnesses of the complainant. This embankment is not immediately connected with the longer one extending to the "sixteen-foot ditch." But, like the longer one, is directly across the natural outlet of the waters, and according to its length is chargeable with a proportion of the injury to the lands of the complainant.

The evidence leaves it in uncertainty whether the defendants have changed the levee or embankment called the " N. L. Brooks eight-foot ditch," to an extent that is injurious to the complainant. That embankment was constructed more than ten years prior to the commencement of this suit. By analogy to the statute limiting actions for the recovery of lands to ten years, the continuous throwing back of the waters by this embankment for that period would create the presumption that it was rightful, barring legal and equitable remedies to redress the injury resulting from it.— *Wright v. Moore*, 38 Ala. 593. There being no material increase of the elevation of the embankment, no change of it disturbing the rights of the complainant, the present suit, so far as that embankment is matter of complaint, would fall within the bar of the statute. But, independent of that consideration, we can not say that the evidence discloses clearly that the embankment is of injury to the lands of the complainant.

No examination of the evidence is necessary to ascertain whether the husband of the complainant consented to, or approved the construction of these embankments. Such consent or approval would not legalize their construction and continuance, as against the complainant, working continuous injury to her lands.—*Thomas v. James*, 32 Ala. 723.

We find no error in the decree; and on each appeal, a judgment of affirmance must be entered.