# Crabtree *v.* Baker.

*Bill in Equity for Injunction and Abatement of Nuisance.*

1. *Rights of proprietors of superior and inferior heritages as to flow of surface water.*—While the owner of higher lands has a servitude or natural easement upon the lower adjoining land for the discharge of all surface water flowing naturally from the former on the latter, and the natural passage of such water can not be prevented or obstructed by the owner of the lower, to the injury of the higher land, this servitude or easement extends only to surface water rising from natural causes, as by rain, and does not authorize the proprietor of the higher land, by the collection of water into drains or artificial channels, to precipitate it in increased quantity and volume upon, and to the detriment of the lower land.

2. *Proprietor of inferior heritage; right to stop flow of surface water.* If the owner of the higher land, by drains or channels artificially constructed, collects the surface water thereon and discharges it, in undue and unnatural quanties, upon the lower lands, this would be an open invasion of the rights of the owner of the latter, which, if suffered to continue without a resort to legal remedies for the period prescribed by the statute of limitations for the recovery of lands, would become evidence of an adverse right; and against this invasion he can protect himself by

[Crabtree v. Baker.]

placing obstructions in the drain or channel, if thereby he does not inflict injury upon innocent strangers; the rule being that where a party can maintain an action for a nuisance, he may enter and abate it.

3. *Same; may defend against injunction to remove obstructions, without proof of actual damage.*—In such case, the owner of the lower lands may defend against a bill in equity filed by the owner of the higher lands, to enjoin the continuance of the obstructions, without proof of actual damage suffered by him from the water discharged through the artificial drains or channels.

4. *Injury resulting from wrongful act; when wrongdoer can not complain.*—In such case, the complainant can not be heard to complain because the obstructions have increased the quantity of water which would flow or stand upon adjacent roads used by the public, although causing peculiar injury to him, he being the original wrongdoer, and the injury having resulted from his own wrongful act in flooding the defendant's lands.

5. *Motion to dissolve injunction by party in contempt; when entertained.*—A party in contempt for a real, substantial, not a mere technical disobedience of an injunction, a disobedience calling for punishment, will not be heard on a motion for its dissolution until the contempt is purged; but the motion may be entertained where the nature and extent of the punishment to be imposed for the contempt depend on the determination of the question, whether the injunction shall be continued or dissolved, and involves essentially the inquiry, whether it was not, in the first instance, improvidently granted.

APPEAL from Mobile Chancery Court.

Heard before Hon. JNO. A. FOSTER.

This was a bill in equity, exhibited by A. P. Baker and Martin Costello against Lewis Crabtree, and filed on 16th February, 1884. Its purpose and its material averments, as well as the facts disclosed by the record, necessary to this report, are stated in the opinion.

On filing the bill, an injunction was granted, enjoining the defendant from damming a certain ditch described in the bill, "or in any wise obstructing the flow of water therethrough, and not only from creating, but from permitting any dam or obstruction of said ditch, and the free flow of water through the same until the further orders of this court." On 29th February, 1884, on the petition of the complainant, a rule *nisi* was issued, as directed by the chancellor, and was, on the same day, served on the defendant, citing him to appear before the chancellor at a designated place and time, and to show cause why he should not be attached for contempt in violating the injunction. The defendant answered the rule, averring, among other things, that since the service of the writ upon him, he had done nothing in the premises, had not removed the dam erected on his land prior to the filing of the bill, and that he was advised by counsel that he was not required to remove said dam. The cause was heard before the chancellor in vacation, on (1) a motion made by the defendant to dissolve the injunction on the denials in his answer, and for want of

equity in· the bill, and (2) on the complainants' motion to· make the rule *nisi* absolute, and for an attachment ; and on 22nd March, 1884, the chancellor filed an opinion and decree on these motions. Being of the opinion that the defendant had theretofore " disregarded the injunction from what seems a misapprehension of his duty," the chancellor declined " to take action against him for his failure to obey the injuction ;" but he overruled the motion to dissolve, and ordered the defendant to remove the dam within five days after the filing of the decree, providing for his imprisonment in the event he failed to obey.

The overruling of the motion to dissolve is here assigned as error.

L. H. FAITH and C. H. LINDSEY, for appellant.

TOULMIN, TAYLOR & PRINCE and H. PILLANS, *contra*.

BRICKELL, C. J.—It is well settled by a uniform course of decisions, English and American, that the proprietors of lands, over or through which " a stream of water usually flows in a definite channel, having a bed, sides or banks, and usually discharging itself into some other stream or body of water," have a clear legal right, not derived from, or dependent upon prescription or long continued use, but a right as matter of law and as an incident of the ownership of the land, to the use of the water flowing in the stream, as it is accustomed to flow, without detrimental diminution or alteration.—3 Kent, 439 ; *Hendricks v. Johnson*, 6 Port. 472 ; *Stein v. Burden*, 24 Ala. 130 ; *Stein v. Ashby*, *Ib.* 521 ; *Burden v. Stein*, 27 Ala. 104 ; *Stein v. Burden*, 29 Ala. 127. The present case, it must be observed, does not draw into consideration the relative rights and duties of such proprietors, and depends upon principles, which,. though they may bear some similarity, are not in all respects identical with the principles which prevail in reference to watercourses. The water now in question naturally originates from the fall of rain upon the lands of the complainants, spreading itself over the surface, collecting, because of depressions in the lands, into ponds, which stand until absorbed or evaporated. The water, so far as it flows off naturally, flows upon the lower lands of the defendant. There is much diversity of opinion in judicial decision, and among the text writers, as to the principles which should govern in reference to such water, termed surface water, in distinction from the water of a stream, and from subterranean or hidden water. The principle this court has adopted, borrowed from the civil law, is, that the owner of higher land has a servitude or natural easement upon the lower·

[Crabtree v. Baker.]

adjoining land for the discharge of all surface water flowing naturally thereon from the higher land, and the owner of the lower land can not prevent or obstruct the natural passage of such water to the injury of the higher land.—*Hughes v. Anderson*, 68 Ala. 280 ; *Ninninger v. Norwood*, 72 Ala. 277 ; following in this respect the cases of *Kauffman v. Griesemer*, 26 Penn. St. 407, and *Martin v. Riddle, Ib.* 415, which were re-affirmed in *Hays v. Hinkleman*, 68 Penn. St. 324. The weight of authority, perhaps, is in accordance with this doctrine, with an exception as to city or village lots and their improvement for building. But the servitude or easement extends only to suface water arising from natural causes, as by the falling of rains and melting of snow ; and it does not authorize the proprietor of the higher land, by the collection of water into drains or artificial channels, to precipitate it in increased quantity and volume upon, and to the detriment of the lower land.—*Hughes v. Anderson, supra ; Kauffman v. Griesemer, supra ; Butler Peck,* 16 Ohio St. 334 ; *Livingston v. McDonald,* 21 Iowa, 160 ; *Adams v. Walker,* 34 Conn. 466 ; *Hicks v. Silliman,* 93 Ill. 255 ; *Miller v. Laubach,* 47 Penn. St. 154. In the case last cited, the court said : " No doubt the owner of land through which a stream flows may increase the volume of water by draining into it, without any liability to damages by a lower owner. He must abide the contingency of increase or diminution of the flow in the channel of the stream, because the upper owner has the right to all the advantages of drainage or irrigation reasonably used as the stream may give him. But that is an entirely different thing from draining the water standing on the lands of one, through artificial channels, on to that of another. That can not be done without his consent." In *Butler v. Peck, supra,* in considering the right of the owner of the higher land, by the construction of artificial drains, to throw surface water, or the water originating upon his land, upon the lower lands of an adjacent proprietor, the court said : " We are clear that no such right exists. It would sanction the creation, by artificial means, of a servitude which nature has denied. The natural easement arises out of the relative altitudes of adjacent surfaces as nature made them, and these altitudes may not be artificially changed to the damage of an adjacent proprietor." The burden resting upon the lower land is to receive from the higher land the water which flows therefrom naturally without the art of man ; the water which comes to it because of its natural depression. There is no right in the owner of the higher land, by artificial constructions designed for its improvement, relieving it from its natural disadvantages, to increase the burdens of the lower estate.—*Hurdman v. N. E. Railway Co.,* 3 L. R. (C. P. Div.) 168 ; Gould on Waters,

[Crabtree v. Baker.]

§ 267; Angell on Watercourses, § 108; Cooley on Torts, 579–80. And if he collects surface water into an artificial channel, casting it in a body upon the lower land, it is an actionable tort, and may be an injury a court of equity would prevent by injunction.—*Hughes v. Anderson, supra ; Ninninger v. Norwood, supra.*

The facts of this case, as shown by the bill and answer, and the affidavits which were submitted upon a motion for a dissolution of the injunction, are, that four or five years ago the complainants became the owners of two several and adjoining parcels of land, lying some four or five feet higher than the land the defendant has since acquired. These lands are all agricultural, and are used for the purposes of agriculture. The lands of the complainants, naturally, in time of heavy rains, were subject to be overflowed by the falling water, which would collect in the depressions thereon, forming standing ponds until it was absorbed or evaporated, rendering parts thereof unfit for cultivation. The complainants have constructed ditches for their drainage which lead into a larger ditch running upon the lands of the defendant and there terminating, by which all the water falling upon the lands of the complainants, and which had been accustomed to form into ponds, is cast upon the lands of the defendant, spreads upon the surface thereof, and inflicts upon him an injury of the same kind, and probably as great in degree, as that from which the complainants relieved their land. For the prevention of the injury the defendant has constructed, at or about the point the ditch enters his lands, an embankment or dam, by which the water is thrown back, and it flows again on the lands of the complainants; and it is the continuance of this dam against which the injunction is directed. Whether there is actual damage to the lands of the defendant, and if there be, its extent, is a matter about which the witnesses differ in opinion. The fact, however, is not controverted, and it is apparent from the breadth, depth, and length of the ditch, from the conformation of the lands through which it runs, and from the fact so prominently pressed in the bill, that it has effectually drained the lands of the complainants, that thereby the water is collected and discharged in undue and unnatural quantities upon the lands of the defendant; and when it is not made to appear that the drainage of the lower land is sufficient to carry it off, there would seem to be little difficulty in reaching the conclusion, that actual, permanent injury results. But there is, in any event, estimable injury, and proof of actual damage is not necessary. There is an open invasion of the rights of the defendant, and if suffered to continue, without a resort to legal remedies, for the period prescribed by the statute of limitations

[Crabtree v. Baker.]

for the recovery of lands, would become evidence of an adverse right. Where the act done is of that character that its repetition or continuance ripens into evidence of a right to do it, the act is actionable in itself, if wrongful, and the law gives nominal damages, though no actual damage has resulted. *Stein v. Burden*, 24 Ala. 130; *Polly v. McCall*, 37 Ala. 20; Wood on Nuisances, § 102.

It will not be denied that the defendant had the right to protect himself against this invasion of his lands—that he could lawfully place obstructions in the ditch which avert the injury, if thereby he did not inflict injury upon innocent strangers. *Martin v. Riddle*, 26 Penn. St. 415. The general rule is, that where a party can maintain an action for a nuisance, he may enter and abate it.—Wood on Nuisances, § 844.

If it be apparent that the dam or embankment has increased the quantity of water which may flow or stand upon the roads or lanes referred to in the original bill, and that it is of peculiar injury to the complainants, they are not now in a condition to complain of it. They are the original wrongdoers, and the injury is one of the results of their wrongful act in flooding the lands of the defendant.

A party in contempt for a real, substantial, not a mere technical disobedience of an injunction, a disobedience for which the chancellor would impose punishment, will not be heard on a motion for its dissolution until the contempt is purged. But where the nature and extent of the punishment to be imposed for the contempt depend on the determination of the question, whether the injunction shall be continued or dissolved, and involves essentially the inquiry, whether it was not in the first instance improvidently granted upon the *ex parte* showing of the complainant, the motion for a dissolution may be entertained.—High on Inj. 875; *Endicott v. Mathis*, 1 Stockton Ch. 110. The violation of the injunction in the present case was not deemed by the chancellor deserving of punishment, and not being punishable, the motion for dissolution was properly entertained.

The result is, the decree of the chancellor must be reversed, a decree here rendered dissolving the injunction, and the cause will be remanded.