[Farris & McCurdy v. Dudley.]

# Farris & McCurdy v. Dudley.

*Bill in Equity for Abatement of Nuisance, and Damages.*

1. *Easement for flow of waters from upper lands, upon lower.*—Where two adjacent tracts of land belong to different persons, the upper or dominant tract has a natural easement or servitude in the lower, for the discharge of all surface water and running streams, and the owner of the lower tract has no lawful right to obstruct the natural flow of the water, to the serious injury of the superior proprietor; the only recognized exception to this rule being in the case of buildings erected on city or village lots.

2. *Riparian rights; obstruction of running stream.*—A riparian proprietor, whether he owns one or both of the banks of a running stream, has no right to build an embankment or other obstruction which, in times of ordinary flood, will operate to throw the waters upon the lands of another proprietor, to his detriment.

3. *Abatement of embankment as nuisance.*—An embankment erected by the defendant upon his own lands, by which the waters of a running stream are thrown back upon the complainant's lands on the opposite side of the stream, will be enjoined in equity as a nuisance, when it appears that, in order to avoid the consequent injury, the defendant would be required to expend a large sum of money, and would be guilty of erecting an unlawful obstruction to the injury of a neighbor; and the fact that, by means of the embankment complained of, the defendant has reclaimed more lands for himself than he injured for the complainant, is no excuse for the wrongful act.

4. *Same; damages.*—Under a bill for the abatement of such embankment as a nuisance, the complainant may also have an inquiry into the damages sustained by him, without recourse to an action at law; and the question may either be decided by the chancellor himself, referred to the register, or submitted to the determination of a jury.

5. *Same; variance in description of embankment.*—The chief (if not the only) purpose of the rule requiring certainty in the description of the embankment sought to be abated, is identity; and where there is no question of identity, a variance between the allegations and the proof, as to the length of the embankment, is immaterial.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed by Joseph R. Dudley, on what day the record does not show, against Farris & McCurdy as partners, to abate as a nuisance an embankment which they had erected on their own lands, on the east bank of Big Swamp creek, and by which, as the complainant alleged, the waters of the creek were accumulated in times of heavy rains, and thrown in increased volume upon his lands on the west side of the creek; and he also asked an inquiry and account of the permanent damages which he had sustained. The defendants de-

murred to the bill for want of equity, specifying several alleged defects, but their demurrer was overruled. They also filed an answer, in which they admitted the erection of a levee, or embankment, on their own lands at some distance from the creek on the east side; but they insisted that it was necessary for the protection and reclamation of their own lands, and denied that it threw any increased volume of water on the complainant's lands; and they further alleged that the embankment which they had erected was not correctly described in the bill. On final hearing, on pleadings and proof, the chancellor held that the complainant was entitled to have the embankment abated as a nuisance, but declined to consider the question of damages; and he rendered a decree requiring the embankment to be thrown down, and giving the complainant leave to sue at law for damages. The defendants appeal from this decree, and here assign it as error; and there is a cross-appeal by the complainant, who assigns as error that part of the decree which refused an inquiry into the damages.

W. L. BRAGG, and W. C. GRIFFIN, for appellants, submitted a printed argument, in which they analyzed the evidence, and contended that it established the following propositions: (1.) The defendants' levee protects to a certain extent a heritage in sections 33 and 32 that is superior to the complainant's heritage in section 30, with prudent safe-guards, such as large water-gaps and sluice-ways to prevent a change of the natural flow of surface water in time of flood; and it does not change the flow of surface water in time of flood, but, in connection with the defendant's levees, concentrates to a more considerable extent the volume of water, aids and directs its flow, and facilitates its discharge. (2.) The defendants' levee, continuing from sections 33 and 32 into section 29, protects a heritage in that section that is equal to the heritage of the complainant in section 30, with prudent safe-guards, such as large water-gaps and sluice-ways, to prevent a change of the natural flow of the surface-water in time of flood; and it does not change the flow of surface-water in the time of flood, but, in connection with the defendant's levees, it concentrates to a more considerable extent the volume of water, aids and directs its flow, and facilitates its discharge. (3.) Before any ditches were cut, or any levees erected, by either party, the whole area of the swamp lands, from bluff to bluff, was subject to overflow, the natural course of such overflow being over the whole area. (4.) The area of complainants' lands affected by the overflow is small when compared with the quantity reclaimed for cultivation by the levees. (5.) The complainant's lands were not in their natural condition, but he had cut ditches and erected embank-

[Farris & McCurdy v. Dudley.]

ments, for the purpose of reclaiming them, before any artificial works were erected by defendants; and he now seeks to abate the defendants' work, when he might protect himself by a slight elevation of his own embankments. (6.) There is a material variance between the allegations and the proof, as to the location, length, and other descriptive featuresof the defendants' levee ; and this variance is fatal.

They cited the following authorities: *Hughes v. Anderson*, 68 Ala. 286; *Kauffman v. Griesmere*, 26 Penn. St. 407; *Waffle v. N. Y. C. R. R. Co.*, 53 N. Y. 11; Wood on Nuisances, 443-4 ; 1 Brick. Digest, 732, §§ 1538-40.

WATTS & SON, and G. COOK, *contra*, cited the following authorities : (1). As to the equity of the bill, and the complainant's right to have the embankment abated as a nuisance, *Nininger v. Norwood*, 72 Ala. 277 ; *Crabtree v. Baker*, 75 Ala. 91 ; 6 Wait's Actions and Defenses, §§ 273, 274, 279, 281 ; 4 *Ib.* §§ 699, 738, 740. (2). As to his right to have the damages ascertained and decreed in this suit, without a separate action at law—Wood on Nuisances, § 792 ; *Stow v. Bozeman*, 29 Ala. 397; *Scruggs v. Driver*, 31 Ala. 274 ; *Sims v. McEwen*, 27 Ala. 184 ; *Stewart v. Stewart*, 31 Ala. 207 ; *Polly v. McCall*, 37 Ala. 20.

SOMERVILLE, J.—The bill in this case was filed by the complainant, Dudley, for the purpose of abating an alleged nuisance, consisting in a levee or earthen embankment erected by the defendants, Farris & McCurdy, upon their own lands, in such manner as to cause the waters of a large creek to overflow the lands of the complainant, to his detriment. The bill seeks also, incidentally, to recover damages caused by such overflow to the lands and crops of complainant.

The case, in our judgment, depends upon two well settled principles of law, as to which there can be no serious controversy in this State since the deliverance of this court in the case of *Nininger v. Norwood*, 72 Ala. 277.

The first of these principles is, that the owner of higher ground has a legal and natural servitude upon all lower estates, by which he is entitled to have discharged all surface-water, or running streams, from the higher upon the lower estate, and the owner of the lower estate has no lawful right to obstruct the natural flow of such water, to the serious injury of the superior proprietor. The only recognized exception to this rule is said to be in the case of buildings erected upon city or village lots.—*Nininger v. Norwood, supra; Crabtree v. Baker*, 75 Ala. 91 ; *Hughes v. Anderson*, 68 Ala. 280 ; Wood on Nuisances (2d Ed.), pp. 440, 446, 456.

The second principle is strictly analogous, and applies to ordinary water-courses, without regard to any question of the superior altitude of one adjacent estate to that of another. This rule is, that a riparian proprietor, whether he be the owner of one or both banks of a running stream of water, has no lawful right to build any obstruction which, in times of ordinary flood, will operate to throw the waters of such stream upon the lands of another proprietor, so as to overflow and damage them. *Nininger v. Norwood, supra; Gerrish v. Clough,* 48 N. H. 9; s. c., 2 Amer. Rep. 164; 2 Kent's Com. 439.

The whole law of nuisances rests upon the maxim of the common law, *Sic utere tuo ut lædas non alienum*—every man must so use his own property as not to injure that of his neighbor. So, the whole law of water-courses is founded on the maxim, *Aqua currit, et currere debet*—water naturally runs, and must be allowed to run in its natural course. As said in *Butler v. Peck,* 16 Ohio St. 334, "where two parcels of land, belonging to different owners, lie adjacent to each other, and one parcel lies lower than the other, the lower one owes a servitude to the upper, to receive the water which naturally runs from it, provided the industry of man has not been used to create the servitude;" or, as otherwise expressed in the same case, " the owner of the upper parcel of land has a natural easement in the lower parcel, to the extent of the natural flow of water from the upper parcel to and upon the lower." This is in accordance with the established rule in England, and with the weight of American authority, and, as said by this court in *Nininger v. Norwood,* 72 Ala. 283, *supra,* " any interference with, or obstruction of the servitude by the lower owner, to the injury of the owner of the dominant estate, subjects him to liability for the resulting damages." Wood on Nuisances (2d. Ed.), p. 454, § 396. It is said by Mr. Angell in his treatise on Water-Courses, § 333, that a riparian proprietor " has no right to build anything which, in times of flood, will throw the waters on the grounds of another proprietor, so as to overflow and injure them." So, in like manner, as observed by Mr. Wood, " the owner of a servient heritage has no right, by embankments, or other artificial means, to stop the natural flow of the surface-water from the dominant heritage, and thus throw it back upon the latter."—Wood on Nuisances, p. 453, § 394; Gould on Waters, §§ 209, *et seq.* The rule as to surface-water and running streams is essentially the same—the two classes of cases being dependent upon identical principles, at least according to the rule of the civil law, which had been established in this State.

In *Nininger v. Norwood,* 72 Ala. 277, *supra,* adhering to these principles, we sustained a bill filed to abate as a nuisance certain levees or embankments, which had been erected on the

lands of defendant, so as to cause the waters of a creek to flow over and flood the land of the complainant, during certain periods of heavy rains, rendering such lands less fit for cultivation, and otherwise injuring them. Incidental damages were also allowed, upon an issue submitted for determination by a jury. In *Wallace v. Drew*, 57 Barb. (N. Y.) 413, it was decided that a riparian owner, who constructed embankments upon his own land, in order to prevent the water of ordinary floods washing the bank and overflowing his lands, was liable for damages caused by the waters of the creek being made to flow upon the lands of the plaintiff, in a manner and volume they were not previously accustomed to flow. And in *Gerrish v. Clough*, 48 N. H. 9 (s. c., 2 Amer. Rep. 165), a defendant was likewise held liable, who, owning land on one side of the Merrimac River, constructed a break-water to prevent the water from enroaching upon his land, and which operated to throw the current upon and wash away the lands of the plaintiff on the opposite shore.

The lands of the defendants in this case are shown to lie on both sides of Big Swamp creek, in Lowndes county in this State, but being chiefly situated on the east side. The lands of the complainant lie adjacent on the west side of the same stream. These lands are partly swamp, and partly arable, and portions of them are subject to periodical overflow in times of ordinary freshets. The testimony satisfies us that the arable lands of the complainant, Dudley, are *higher* than the adjacent lands of the defendants, and that the natural course of this creek, in periods of overflow, is northward from its junction with Ash creek, over the lands of both parties in section 29 and 30, but flooding several hundred acres more of defendants' arable lands than of complainant's, and largely more of their unarable swamps lands. We are satisfactorily convinced, moreover, from the testimony, that the construction of the levee in question by the defendants has tended to divert the waters of Big Swamp creek from their natural course, so as to throw their current towards the north-west, and in such manner as to materially increase both the depth and the area of the overflow upon complainant's land in times of ordinary freshets. The inference from the evidence is fair, that the area of overflow has been at least doubled, and the level of the water raised to a height greater by from one to two feet than before the erection of the levee. It is true that the defendants have reclaimed for themselves more land than they have been instrumental in submerging periodically for the complainant. But this is, in our judgment, no excuse for their wrongful act. The law requires of them that, in reclaiming their own land, they should not have seriously injured their neighbor. They have no

[Farris & McCurdy v. Dudley.]

right to maintain the obstruction, because it works irreparable hurt, inconvenience, and damage to an adjacent proprietor, whose estate they are not permitted to destroy that they may benefit themselves.—Wood on Nuisances, p. 373. It is a fair inference from the testimony in the cause, that the damage shown to be suffered by the complainant is irreparable without a vast expenditure of money by him, and without himself being guilty of erecting an obstruction which a court of equity would probably be compelled to declare a nuisance as against one Robinson, who is an adjacent proprietor, owning lands above those of complainant on the west side of the creek in section 30.

The decree of the chancellor is correct, in so far as it requires the abatement of the alleged nuisance. But it is erroneous in failing to determine the question of damages, which could have been done either by the chancellor himself, or by reference to the register for report, or else it could have been submitted to the determination of the jury.

We find nothing in the case of *Hughes v. Anderson*, 68 Ala. 280, or of *Crabtree v. Baker*, 75 Ala. 91, which conflicts with the foregoing principles. We fully recognize the principle, that all questions arising under these rules should be weighed and decided with a proper reference to the value and necessity of the improvement to the superior heritage, contrasted with the injury to the inferior; "a license which," it was said by STONE, J., in the first mentioned of the above cases, "must be conceded with great caution and prudence."

The alleged variance between the description of the levee as contained in the bill, and that established by the proof, does not seem to us to be material. The chief, if not the only purpose, of the rule requiring certainty in description, is identity. The one proved to have been erected is shown to extend from section 33, through section 32, and partly through section 29, for nearly two miles on the east side of the creek, and about parallel with its channel. The alleged variance lies in the averment of the bill, that this levee extends as far north as section 20, which is adjacent to section 29. It affects, therefore, merely the question of its length; and this, under the facts of the case, is not fatal as a matter of identification. The levee described can not be confounded by the court with any other shown to exist, nor could the defendants, as it seems to us, have been misled by it.

The decree must be reversed, and the cause remanded, on the cross-appeal taken by Dudley. The costs of the appeal, in this court, and in the court below, will be taxed against the appellants, Farris & McCurdy.

CLOPTON, J., not sitting.

[Farris v. Stoutz.]

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application by appellants' counsel for a rehearing, and for a modification of the opinion, the following opinion was delivered:

SOMERVILLE, J.—Upon application for a rehearing, we are satisfied that exact justice between the parties litigant in this cause requires the opinion to be modified. We hold, accordingly, that the complainant is entitled to have the levee in question declared a nuisance, and subject as such to abatement, so far only as to obviate the continuance of such nuisance, and of the damage which may result from it. The complainant has a right to be placed practically in *statu quo*, so far as his lands are affected by the increased overflow of Big Swamp creek and its tributaries, which may be produced by the construction of the levee.

It not appearing, however, from the testimony in the record, to what extent this abatement is necessary, or how much and what particular portions of the levee should be demolished in order to accomplish the desired result, the cause will be remanded, in order that the chancellor may direct a reference to the register, to take testimony and report to the court his conclusions on this matter of reference, in connection with the subject of damages already occasioned by such overflow. The investigations of the register will be confined alone to these particular points of inquiry.

The decree of the chancellor was erroneous, and will be reversed and the cause remanded, that the reference may be made to the register for the purposes specified. The costs of appeal in this court and the court below will be equally divided between the parties.

