# Mobile & Birmingham Railroad Co. v. Worthington.

*Action for Damages by Contractor against Railroad Company.*

1. *Bill of exceptions not signed in term time, nor within time then allowed.*—When a bill of exceptions is not signed in term time, nor within the time then allowed by order of court for its preparation, but the transcript contains what are called "Judge's orders extending the time" from day to day, which purport to be signed by the presiding judge, though not a part of the record proper, nor made a part of the bill of exceptions, the bill will not be stricken from the record on motion.

2. *Bill of particulars; relevancy of evidence under.*—When plaintiff claims damages of the defendant railroad company for a breach of contract in refusing to let him build certain trestles which he had agreed to build, and in failing to furnish the necessary timber and materials within the time specified, whereby he "was delayed and put to great expense and trouble in the maintenance of necessary teams;" the bill of particulars, furnished on demand, containing items for "corn, oats and bran consumed," it is permissible for plaintiff to prove that it was necessary and proper to have teams for use on the work.

3. *Objection and exception to "each sentence" of letter.*—When objection is made and overruled to the admission of a letter as evidence, and objection is then made "to each sentence of said letter separately," the latter objection is but a repetition of the general objection to the whole letter.

4. *Letter or declarations of third person as evidence.*—Plaintiff claiming damages of a railroad company for not letting him do work which he had contracted to do, and in other particulars connected with the work done, and the defense being that he was only a sub-contractor under another person, with whom the company had settled in full; a letter written by that person to him, saying, "They paid it without regard to you, ignoring you except as a sub-contractor, and it leaves your claim for changing work and giving you more expensive work to

[Mobile and Birmingham R. R. Co. v. Worthington.]

do as it stood before," is not admissible as evidence for plaintiff, though it might be admissible against him.

5. *Declarations as part of res gestæ.*—A witness testifying as to a settlement made by him with the officers of a railroad company, for work done by him under contract, in which work plaintiff claimed to be also interested as a contractor, may state what he told the railroad officials as to his contract with plaintiff, and as to the extent of his authority to represent plaintiff in the settlement; such declarations being part of the *res gestæ*, and admissible as original testimony.

6. *Giving bond as part of contract; evidence as to.*—When a material issue is whether plaintiff performed work for the defendant railroad company as an original contractor or as a sub-contractor under another person, the defendant may prove the fact that he gave no bond for the faithful performance of the work, bonds being required of contractors, and of them only.

7. *To what witness may testify.*—The chief engineer of a railroad company, testifying as to work done by plaintiff on railroad trestles, whether as original contractor or as sub-contractor under one P. being the question at issue, may use these expressions: "This contract was given to him by P. at my special instance, and because of my previous negotiations with him; the amount of work done by him for P. on the trestles is the identical amount of work he would have done for the company if the company had contracted directly with him instead of P., as he did all the framing that was done on the trestles." Also, "At all events, the entire claim is erroneous, . . and, from an engineering stand-point, is preposterous."

8. *Relevancy of evidence as to contract vel non.*—The question at issue being whether plaintiff, in performing work on railroad trestles, was an original contractor with the railroad company or a sub-contractor under one P., the defendant com any may prove the fact that, during the performance of the work, he received instructions and directions from P. without objection.

9. *Publication for bids as evidence of contract vel non.*—Where plaintiff sues for the breach of an alleged contract with a railroad company for the construction of trestles, and the defendant denies that any contract was ever consummated between them, the publication for bids for the doing of the work, signed by the chief engineer, is admissible as evidence for either party: for the plaintiff, as showing that the approval of the contract by the president of the company was not required: and for the defendant, as showing that security was required for the prompt and faithful performance of the work, which plaintiff had never given.

10. *Charge as to validity of verbal contract.*—In an action for a breach of contract which, under the law or the express agreement of the parties, was required to be in writing, a charge instructing the jury that "a verbal contract is as valid and binding as a written one" would be reversible error; but, where there is evidence tending to show a waiver of the stipulation by the party for whose benefit it was intended, such a charge is misleading only, and subject to explanation, but does not constitute reversible error.

11. *Costs of bill of exceptions.*—The bill of exceptions in this case purporting to set out substantially all the evidence, though no charge was given or asked as to the effect of the evidence, and being held unnecessarily long, the cost of copying it was equally divided between the parties, though the judgment was reversed and the cause remanded.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by Charles M. Worthington against the appellant railroad company, to recover damages for the breach of an alleged contract by which plaintiff agreed and undertook to construct certain trestles for the defendant on the line of its road, at stipulated prices, but was delayed and hindered by defendant in the performance of the work, and was not permitted to do the work embraced in his contract; and he also claimed, under the common counts, compensation for extra work done and materials furnished. The plaintiff contended, and himself testified, that he had made a contract for doing the work on specified terms with W. M. Patton, the chief engineer of the railroad company; while Patton, as a witness for the defendant, denied that any contract between them had ever been consummated, and testified that, in consequence of the negotiations between them not being completed, he had induced one Putnam, another contractor, to give plaintiff the same work which he would have done under his own contract, and that plaintiff thus worked as sub-contractor under Putnam. The plaintiff offered in evidence the proposals for bids to do the work, as published in the Mobile papers in August, 1886, over the signature of said Patton as chief engineer, which were in these words: "Proposals will be received until noon of August 31st, for the repairing of the road-bed of the old Alabama & Grand Trunk R. R. between Mobile and the Tombigbee river and Jackson, Ala. . . Plans and specifications can be seen on and after August 21st. Proposals may embrace the whole work, or any part of it. Sufficient security to secure the prompt and proper execution of the work will be required, and the right to reject any and all proposals is reserved." It was not shown that plaintiff had ever given, or offered to give, security for the proper execution of the work; and the defendant offered evidence tending to show that his embarrassed financial circumstances were an obstacle to the consummation of the proposed contract with him.

It was shown that said Putnam had made a settlement with the railroad company for the work done under his contract, and it was a controverted question whether this settlement embraced plaintiff's claim, or how far he was authorized to bind plaintiff. The plaintiff offered in evidence, in this connection, a letter written to him by Putnam soon after that settlement, dated March 22d, 1888, and in these words: "I succeeded in getting to a settlement with the

[Mobile and Birmingham R. R. Co. v. Worthington.]

R. R. people finally. They cut down more than I wished to stand, but I thought it better than a suit. In the items which I drew from your account they paid me $3,290, which I place to your credit. They paid me on account of the work, and I will send you a statement upon what accounts they paid. They paid it without regard to you, ignoring you except as a sub-contractor. I am sorry that I could not get more out of them. The item for taking out the timber to construct new work should have been made out differently, and charged per thousand for the whole amount, say $5.00 per M. on such sum as you think it worth. I tried to get them to allow that price per M. on 250,000 B. M. It leaves your claim for changing contract and giving you more expensive work to do as it stood before." The defendant objected and excepted to the admission of this letter as evidence, and to the admission of each separate sentence.

The assignments of error, 70 in number, embrace many other rulings on evidence, with numerous charges given and refused, but the opinion of this court renders a further statement of the facts unnecessary.

The appellee submitted a motion to strike out the bill of exceptions, because it was not signed within the time prescribed by the order of the court. This motion was founded on these facts: by an order of court entered on the 26th November, 1890, three days before the final adjournment, sixty days after the adjournment were allowed for the preparation of the bill of exceptions, but the bill was not signed until the 20th March, 1891. But the clerk has also copied in the transcript what are entitled "Judge's orders extending time for signing bill of exception;" and these orders, three in number, were each signed by Judge Semmes, marked *filed* on the day of their respective dates, and extended the time as follows: from the 7th January, for 30 days; from the 27th February, until the 15th March; and from the 15th March, for five days longer. The bill of exceptions fills 70 pages of the transcript, and purports to set out "substantially all the evidence;" and this was made an additional ground for striking it out, as the general charge on the evidence was not asked.

GAYLORD B. CLARK & F. B. CLARK, for appellant.

GREG. L. & H. T. SMITH, *contra.*

STONE, C. J.—The motion to strike the bill of exceptions from the transcript must be overruled. The act of Febru-

ary 22, 1887—Sess. Acts, 126—which provides that the court in term time may fix the time within which bills of exceptions may be signed, contains the further clause, that "the judge in vacation may, for good cause, extend the time fixed in term time;" but in no case to allow more than six months beyond the adjournment of the term at which the case is tried. The statute is silent as to the manner of showing or authenticating the judge's order of extension. Whenever, as in this case, the clerk embodies in the transcript what purports to be a copy of the judge's order of extension, we think it our duty to regard and treat it, at least, as *prima facie* correct.

The main purpose of this suit by Worthington was to recover damages of the railroad company for the breach of an alleged contract. Worthington claims to have been a bridge-builder, and that he made a contract with Patton, the chief engineer of the road, to construct three trestles at and near certain named streams, to be crossed by the railroad's track. The complaint contains a special count setting forth the alleged terms of the letting; avers that although plaintiff "has at all times been ready and willing to comply with all the provisions of said contract on his part, and has so complied so far as he has been permitted so to do by the defendant, the defendant has failed to comply with the following provisions thereof." The complaint then assigns five several breaches, and among them the following: That "it has wholly failed and refused to furnish to the plaintiff the larger portion of said work, . . and refused to permit him to perform the same . . It wholly failed to furnish the said timber and material, at the time it had contracted to so furnish the same, and thereby postponed and delayed the plaintiff, and put him to great expense and trouble in the maintenance of necessary teams, and the maintenance and compensation of laborers. . . It wholly failed and refused to furnish to the plaintiff the necessary timber and material to enable him to perform the large portion of the work specified in the contract." The plaintiff also claimed that he had been permitted to do, and had done, some of the work contracted to be done, and had done other work outside of the contract which had been received: and the complaint contains common counts for the purpose of recovering for such work done.

The defendant demanded a bill of particulars under the statute, and one was furnished. Testimony was offered to prove that teams were necessary to do the work set forth in the complaint; and it was objected to as not specified in the

bill of particulars. The objection was overruled, and the testimony received; and this raises the first question we need consider.

It is assigned as part of one of the breaches of the special contract alleged to have been made, that defendant had put plaintiff "to great expense and trouble in the maintenance of necessary teams." There was some proof that teams were a necessary power in raising large timbers in the construction of trestles of the height here required. True, there was no testimony tending to show that seventeen yokes of oxen were needed, but the record presents no ruling on that question. The bill of particulars gave notice of items of "corn, oats and bran consumed," for which compensation was claimed. These were suitable food for teams.

The question propounded for and to plaintiff as a witness in his own behalf was as follows : "Explain whether or not it was necessary or proper to have teams up there to do anything on the work?" Objected to, because not specified in bill of particulars ; objection overruled, answered affirmatively, and exception reserved. We think there was nothing in this exception. Defendant had sufficient notice of this claim to prevent him from being surprised.—Code of 1886, § 2670 ; *Robinson v. Allison,* 36 Ala. 525 ; *Fountain v. Ware,* 56 Ala. 558.

Plaintiff offered in evidence a letter written by Putnam to himself, bearing date March 22, 1888. Defendant objected, and the objection was overruled ; the court remarking that it was permitted to be put in evidence, "as it might tend to show whether or not Worthington knew that Putnam was making any settlement with the railroad company." Defendant then objected to each sentence of the letter separately; this objection was overruled, and separate exceptions reserved. The letter was read in evidence. Reserved as this exception was, it is probably our duty to treat is as a general exception to the whole letter.—*Mayberry v. Leach,* 58 Ala. 339.

The most important issue of fact in this case, as developed in the pleadings and testimony, was whether Worthington had an independent contract with the railroad company to build the trestles, or whether he did what work he is shown to have done under Putnam's contract, or by permission of Putnam. Worthington testified that he made and concluded an independent contract with Patton, the chief engineer, to construct the three trestles. The special count in the complaint is framed on that basis, and claims damages for not being permitted to do the work. Patton denied making

such contract with Worthington, and claimed that the only contract he concluded was with Putnam. In making settlements with Putnam, he and his successors recognized him as contractor, and refused to recognize Worthington as a contractor, save as an employe under Putnam. On the issue of original contract *vel non* with Worthington, his testimony and that of the engineer were in direct conflict. It is claimed by the parties to these opposing versions that they were severally more or less corroborated by other testimony. This was purely a question for the jury.

In settling with the railroad officials for work done under his contract, Putnam testified that he was not authorized to agree on a binding settlement of Worthington's claim, but was authorized to receive any amount the authorities would pay him for work done by the latter. Some moneys on this account were paid to, and received by Putnam ; and he testified that he subsequently accounted to Worthington for such collections. The witnesses were not agreed as to the nature of Putnam's settlement, whether it was entirely on his own account as contractor to build the trestles, or in part as the representative of Worthington under the latter's independent contract. Extra work, not embraced in any original contract, had been done by Worthington, and there was no dispute about Worthington's right to be paid for that. The point we are now considering has nothing to do with the claim for such extra work.

Presented before the court and jury as the issue of fact above stated appears to have been by the testimony, it may be that Putnam's letter to Worthington of March 22, 1888, would have been competent evidence for the defendant, if offered by it. It was not competent evidence for the plaintiff, and should have been excluded.

What Putnam testified he told the railroad officials while settling with them, in relation to his contract with Worthington, and the extent of his authority to represent him, was part of the *res gestæ*; was original testimony, and rightly received, without any special predicate being laid for its introduction.

Patton, the engineer, on being asked whether a bond had been given by Worthington, answered, "Worthington never gave any bond or security to the company, because they were only demanded where contracts were made, and no contract was ever made with him." His testimony had been taken by deposition. This answer, on motion of plaintiff, was excluded from the jury, and defendant excepted. In this we think the City Court erred. Whether he had given a

bond or not was a circumstance the jury should know and consider in determining whether there had been a concluded contract, or mere negotiation looking to the formation of a contract. The balance of the answer had been previously deposed to by Patton, and it was no error to repeat it. Nor was it improper to state as fact that the company required bonds from contractors only.

The witness Patton gave two answers, each of which, on a separate motion of plaintiff, was stricken out, and exceptions severally reserved. The answers were as follows : (1.) "This contract was given to Worthington by Putnam at my special instance, and because of my previous negotiations with Worthington. The amount of work done for Putnam by Worthington on the trestles is the identical amount of work that he would have done for the company, had the company contracted directly with him instead of with Putnam for the framing, as he did all the framing that was to be done on the trestles." (2.) "But, at all events, the entire claim is erroneous, if it pertains to the construction of the Bigbee River, Bassett's and Lewis' Creek trestles, or any part of them, as the entire work of those trestles was done under contract with Putnam, as far as the railroad company was concerned ; and even Putnam himself would have no claim to these items. The claim is, from an engineering stand-point, preposterous."

Patton was the chief engineer at the time the contract was let out. If Worthington was an original contractor, he made his contract with Patton, and no one else. He, Patton, testified that he negotiated with Worthington about the work, price per thousand feet was concurred in, but that no contract was consummated. (As to what constitutes a binding contract, see *Rutledge v. Townsend*, 38 Ala. 706.) He testified further, that when he let the contract to Putnam, he requested him to give to Worthington the construction of these trestles. In the first answer above he simply reiterated the manner in which he had said Worthington obtained the job on the trestles, and he then added that Worthington had done all the work on the trestles which he would have done, if he had himself become the contractor with the company. There was certainly nothing illegal in this. It was all, in form, a statement of fact, although, to some extent, a collective statement. This is permissible, and, to avoid prolixity, frequently desirable.—*Pollock v. Gantt*, 69 Ala. 373 ; *Elliott v. Stocks*, 67 Ala. 290. The second answer was but a repetition of the statement that the railroad's contract was with Putnam, not Worthington, with

the superadded statement, as an engineer and expert, that a particular item, for which a separate charge was made, was improper, whether the work was done by Putnam or Worthington. The City Court erred in each of these rulings.

As we have said, an important issue in this case was, whether Worthington was an independent contractor, or a sub-contractor under Putnam. The witness Slaughter had, for a time, had some agency, or supervision, in connection with the erection of the trestles. In answer to a proper question, he testified, "I certainly recollect he [Putnam] was giving him [Worthington] instructions." He was then asked this question : "Did Mr. Worthington make any, and if so, what objections, in your presence, to Putnam giving him instructions or directions about the manner of doing pile-work at Lewis' Creek, and about the manner of his doing the superstructure on that pile-work, the framing of the trestles ?" On objection from plaintiff, the witness was not allowed to answer this question, and defendant excepted. This was error. If Worthington submitted to direction and control at the hands of Putnam, it was, at least, a circumstance to be weighed by the jury in determining whether he was working under independent contract, or under Putnam.

The publication for bids was competent testimony for either party. For the plaintiff, in that it gave no notice that contracts, to be binding, must first be submitted to, and approved by the president of the railroad. For the defendant, in that it notified the bidders who were induced by it to make bids, that "sufficient security to insure the prompt and proper execution of the work will be required." The answer to this question ought to have been received.

We consider it unnecessary to notice any other exceptions to rulings on testimony.

The court affirmatively charged the jury, at the instance of plaintiff, "that a verbal contract is as valid and binding as a written contract." There were also two charges requested by defendant, and refused, to the effect that there was not sufficient evidence in this case to authorize the jury to find a contract was made with Worthington to build the trestles.

It was certainly one of the terms of the advertised letting, that the contractor should give "sufficient security to insure the prompt and proper execution of the work." If, at the time of the interview between Patton and Worthington, that, or any other term of the contract, was left

[Mobile and Birmingham R. R. Co. v. Worthington.]

open for future agreement or action, then no contract was completely made and agreed on, and could not be, until Worthington executed the required security, or tendered its execution. Even if the negotiation had progressed so far that the terms were all agreed on, and Worthington was promised the job on his giving the required security, this would preclude him from maintaining an action for a breach of the contract, unless within a reasonable time he executed, or offered to execute said security.

This provision of the offer was inserted for the benefit of the railroad, and it was competent for that party to waive it. We can not affirm, as a matter of law, that it was not waived. We therefore hold that the plaintiff's failure to prove that the security was given or tendered was, at most, a circumstance to be weighed by the jury, in determining whether a concluded contract was agreed on with Worthington.

Whenever, under the terms of the law, or of the agreement made, a writing is necessary to complete the contract, or to make it binding, it would be error to charge the jury that "a verbal contract is as valid and binding as a written one." But, inasmuch as security could have been waived in this case, the only criticism the charge is subject to is, that it did not take in all the bearings of the question. It may have presented a proper case for an explanatory charge, but the giving of it was not a reversible error. There is nothing in any of the charges given or refused which calls for a reversal.

For the erroneous rulings on the admission of evidence, pointed out above, the judgment of the City Court must be reversed.

Reversed and remanded.

PER CURIAM.—The bill of exceptions in this transcript is unnecessarily long. Let the judgment show that the appellee is taxed with only half the cost of copying the bill of exceptions in the transcript. The other half must be paid by the appellant.