# King Land & Improvement Company v. Bowen.

## Damages for Overflowing Land.

(Decided February 4, 1913.   61 South. 22.)

1. *Parties; Amendment; Misnomer.*—Where the action was begun against the King Land Company, a corporation, and the King Land & Improvement Company, the party intended to be sued, was served with process, appeared and defended the case on its merits, it was proper to permit an amendment describing it as the King Land & Improvement Company, although there was in existence a corporation by the name of King Land Company.

2. *Evidence; Judicial Notice; Corporate Existence.*—Where the record did not show that fact, the appellate courts cannot take judicial notice that there was a corporation known as the King Land Company, where the action was originally brought against that company, and was amended to designate defendant as the King Land & Improvement Company.

3. *Water and Water Courses; Surface Water; Pleading.*—A count alleging that plaintiff was in possession of certain described land, and that defendant wrongfully caused large quantities of water to overflow said land to plaintiff's damage, and another alleging that defendant's servant or agent wrongfully caused the water to overflow the land, and another alleging that defendant negligently caused it to overflow the land, was sufficient without specifying the particular acts or omissions complained of.

4. *Same.*—In an action for causing surface water to overflow plaintiff's land, an allegation that plaintiff was in possession of the land, was sufficient to show defendant's duty not to wrongfully or negligently cause water to flow thereon; possession embracing the conception not only of a physical occupancy and control but of the right to occupy and control.

5. *Same; Drainage.*—An owner of higher land may ditch and drain his land as he pleases so long as he does not thereby increase the burden on the adjoining land; he may not increase that burden by causing more water to flow on the lower land than it otherwise naturally would receive, through artificial means, although he may, under extraordinary circumstances, increase the burden at a particular point by concentrating the water into one channel, but must exercise such a right with a prudent regard for the welfare of the lower owner.

6. *Same; Jury Question.*—Ordinarily it is a question for the jury to determine whether exceptional circumstances and conditions exist upon which to predicate an owner's right to concentrate surface water into one channel, thus depositing it on adjoining land in unusual volume, and with unusual rapidity, and whether such

[King Land & Improvement Company v. Bowen.]

conditions and circumstances are sufficient to give rise to such right, and whether defendant exercised such right, if such conditions and circumstances exist, with a prudent regard to the servient tenement and cause no more damage or injury than was reasonably necessary.

7. *Same; Evidence.*—Where the action was by a lessee for damages for overflowing the lands with surface water, it was not competent to ask him if he did not leave the place, and forfeit his contract because delinquent in his rents, since whatever his reasons for leaving were, they would not deprive him of his right to recover damages sustained prior thereto.

8. *Same; Damages.*—Where the action was for causing surface waters to overflow plaintiff's land, an allegation that he was put to great trouble and expense and inconvenience in his efforts to use the land for the purpose of raising a crop, did not justify a recovery for the value of fertilizers distributed over the land, and lost or rendered valueless by reason of the overflowed condition, such allegation referring only to those expenses incurred after the overflow as a proximate consequence thereof, and not to such as were previously incurred and rendered valueless by the overflow.

9. *Same.*—It was proper to refuse an instruction to find for defendant if plaintiff, by the exercise of ordinary care and diligence, could have prevented any damage to his property from such overflow, for although plaintiff could not recover such damages as he could have prevented, by the exercise of such care and diligence, yet his failure to exercise the same would not prevent the recovery of those damages which he could not have prevented.

10. *Damages; General; Special.*—General damages are such as naturally and necessarily flow from the wrongful act, while special damages are such as naturally but not necessarily flow therefrom.

11. *Same; Pleading; Necessity.*—Since a defendant is supposed to know the damages necessarily resulting from his wrongful act, general damages are recoverable, although not pleaded; special damages, however, must be claimed or pleaded that defendant may have proper notice thereof and an opportunity to meet the same by proof.

12. *Same; Special.*—In an action for causing surface water to overflow plaintiff's farm land, the value of fertilizer distributed over the land and lost or rendered valueless by the overflow constituted an item of special damages, and was required to be pleaded to be recoverable.

13. *Charge of Court; Preventing Damages.*—A charge asserting that if the jury could possibly see from the evidence that the plaintiff by the existence of ordinary care and diligence, could have prevented the damages sued for, was misleading, as it apparently assumed that plaintiff could have prevented damages, and required a verdict for defendant to be predicated not on a finding from the evidence that plaintiff could have prevented the damages, but on the ability of the jury to see from the evidence, and assumed the truthfulness of the fact that the plaintiff could have done so.

14. *Appeal and Error; Assignment; Joint.*—Where an assignment of error contains more than one proposition, it is not sustained if one ruling was correct.

15. *Witnesses; ·Examination.*—It is not error to exclude a leading question upon objection interposed thereto.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by William E. Bowen against the King Land & Improvement Company for damages for overflowing land. Judgment for plaintiff, and defendant appeals. Reversed and remanded on rehearing.

"Count 1. The plaintiff claims of defendant $1,000 as damages for that, heretofore, to wit, for a year immediately preceding the filing of this suit, plaintiff was in possession of the following tract of land, to wit: E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 20, township 17, range 2 W., and a part of S. W. $\frac{1}{4}$ of said N. W. $\frac{1}{4}$, described as follows, to wit: 'Begin at the southeast corner of said northwest quarter of the northwest quarter of section 20, run thence south along the east boundary line [and here follows description by metes and bounds]' upon which land plaintiff resided with his family, and conducted the business of keeping a dairy and raising crops, chickens, and other things; that during said year large quantities of water were caused to flow or be upon said land, and as a proximate consequence of said water flowing or being upon said land, as aforesaid, said premises were rendered of less value to plaintiff as a place of residence and a place to conduct said business, and was rendered less comfortable and convenient for plaintiff as a residence for himself and family, and as a place to conduct said business, and plaintiff was put to great trouble, inconvenience, and expense in or about using, and his efforts to use said place for the purpose aforesaid, and plaintiff was made sick, and suffered great mental and physical pain, and members of plaintiff's family, to wit, his wife and children, were made sick, and plaintiff was put to great

trouble, inconvenience, and expense for medicine, medical attention, care, and nursing, in or about his efforts to heal and cure their said sickness. Plaintiff alleges that defendant wrongfully caused said water to flow or be upon said land, and said wrong of defendant proximately resulted in said injuries and damage to plaintiff.

"Count 2. Plaintiff refers to and adopts all the words and figures of the first count, from the beginning thereof, to and including the words, heal and cure their said sickness,' where they first occur together in said count, and adds thereto the following words of averment: 'Plaintiff avers that defendant's servant or agent, acting within the line and scope of his authority as such, wrongfully caused said water to flow or be upon said land, and said wrong of defendant's said servant or agent proximately resulted in said injuries and damage to plaintiff.'

"Count 3. Plaintiff refers to and adopts all the words and figures of the first count, from the beginning thereof to and including the words, 'heal and cure their said sickness,' where they first occur together in said count, and adds thereto the following words of averment: 'Plaintiff avers that defendant negligently caused said water to flow or be upon said land, and said negligence of defendant proximately resulted in the said injuries and damage to plaintiff.'

The demurrers were as follows: "(1) Said count fails to show how and in what manner the defendant wrongfully caused said water to flow or be upon said lands. (2.) The allegations of said count as to the wrong and injury done by defendant to the plaintiff is too indefinite and uncertain, and does not sufficiently allege how the defendant caused injury to the plaintiff. (3) Said count does not set forth and allege facts suf-

ficient to make a cause of action against the defendant. The defendant demurs to the second and third counts of the complaint, and assigns all of the grounds of demurrer assigned to the first count thereof."

The following charges were refused to the defendant:

"(2) The court charges the jury that defendant had the right, under the law, to protect his said land by drainage from the surface water of the property to which his land was servient, provided it acted with reasonable care and diligence, and if in so doing, said rainwater then flowed upon plaintiff's land, and the damages complained of resulted therefrom, your verdict must be for the defendant.

"(3, 4) Affirmative charge as to the second and third count."

"(6) The defendant had a right to ditch or grade its land, provided it did so with prudent regard to the welfare of plaintiff, and provided it did no more than concentrate the water and cause it to flow more rapidly and in greater volume on plaintiff's land.

"(7) If the jury believe from the evidence that the excessive rainfall caused the breakage of the dam erected by the defendant for the protection of his property, and this precipitated a great volume of water upon plaintiff's land which was the natural course for the water to flow, then defendant would not be liable to plaintiff in damages.

"(8) The owner of lands has a right to drain them by artificial ditches, although thereby the water is precipitated more rapidly, and in greater volume, on the land of an adjacent proprietor below, provided, he deos not thereby cause water to flow on the lands of such adjacent proprietor, which in the absence of the ditch would have flowed in a different direction, and provided he acts with a prudent regard for the welfare of his

neighbor, and if the jury believe from the evidence in this case that defendant by digging said ditch did not cause water to flow on said lands which did not previously flow thereon, they must find for the defendant.

"(9) The defendant had the right by ditches, or otherwise, to cause the water to flow on the land of the plaintiff, which in the absence of such ditches would not have flowed in a different direction.

"(10) If the evidence shows that the land of the plaintiff was lower than that of defendant, and that defendant did nothing which caused the water to flow upon plaintiff's land which would naturally flow thereon, the defendant would not be liable for damages sustained by plaintiff, and their verdict must be for the defendant."

A. C. & H. R. HOWZE, for appellant. The court should have sustained the demurrers to the complaint as it does not specify the quo modo or the facts on which the negligence is based. It is error to permit the worth of the fertilizer to be shown, as they were special damages not claimed in the complaint.—*Hooper v. Armstrong,* 69 Ala. 343; *Pollak v. Gantt,* 69 Ala. 383; *A. G. S. v. Tapia,* 10 South. 236; *Dowdell v. King,* 12 South. 403. The court was in error in not permitting it to be shown that plaintiff left the land, and forfeited his contract, because of delinquency in his rents. The evidence discloses that plaintiff's land was the servient tenement and that if the old drain on his land which had been allowed to fill up, had been opened, it would have carried the water off, and therefore, the court erred in not permitting it to be shown that if properly opened the drain would have carried off the water without injury to plaintiff.—*Hughes v. Anderson* 68 Ala. 280; *Crabtree v. Baker,* 75 Ala. 92; *Nininger v.*

*Norwood,* 72 Ala. 277. On these same authorities, charges 2, 6, 7, 8, 9, and 10 should have been given. The lower landowner owes a servitude to the upper landowner to receive surface water which naturally flows from it, and the upper owner owes no duty to the lower to prevent surface water from flowing in its natural channel.—*S. S. S. & I. Co. v. Mitchell,* 52 South. 69; *S. A. & M. R. R. Co. v. Buford,* 106 Ala. 312; *Gray v. McWilliams,* 21 L. R. A. 593; 30 A. & E. Enc. of Law, 335. The defendant was partly, if not wholly to blame for any damage sustained by the overflow as plaintiff offered to pay the expenses of opening the old drain for the benefit of plaintiff.—*S. S. & I. Co. v. Mitchell,* 49 South. 851; *C. of Ga. v. Windham,* 126 Ala. 562; *L. & N. v. Moore,* 10 L. R. A. 579; *Raleigh v. Clark,* 71 S. W. 857. On these authorities, charges 1 and 5 should have been given. The court erred in permitting the amendment changing the defendant.—*Western Ry. v. McCall,* 89 Ala. 375; *S. A. & M. R. R. Co. v. Buford, supra.*

BOWMAN, HARSH & BEDDOW, for appellee. The complaint was entirely sufficient.—*L. & N. v. Marbury L. Co.,* 125 Ala. 237; *Armstrong v. Montgomery St. Ry.,* 123 Ala. 244; *Leach v. Bush,* 57 Ala. 145; 130 Ala. 459. The fertilizers lost or rendered valueless were a proper element of damage as they were sufficiently covered by the allegations of the complaint.—*B. R. L. & P. Co. v. Brown,* 150 Ala. 331; 107 Mass. 568; 50 Mich. 100. Counsel discuss other assignments of error relative to evidence but without further citation of authority. The lower land is not subservient to the upper where the water is increased by street improvements, etc.—*Hall v. Rising,* 141 Ala. 433; 126 Ala. 555; *Drake v. Lady Ensley,* 102 Ala. 508. The amendment was properly allowed.—Section 5367, Code 1907; *Lewis L. Co. v. Cam-*

*ody,* 137 Ala. 578; *Ex parte Nicrosi,* 103 Ala. 104; *Singer Co. v. Greenleaf,* 100 Ala. 272, and authorities cited by appellant. There was no error in the instructions as to damages.—*A. C. C. & I. Co. v. Vines,* 151 Ala. 398; *Mayor v. Land,* 137 Ala. 538.

THOMAS, J.:—The complaint, as originally filed and served on the defendant, was against the King Land Company, a corporation. At the trial, with the permission of the court, granted over the objection and exception of the defendant, the plaintiff was allowed to amend his complaint by correcting the name of the defendant corporation so as to make it read "King Land & Improvement Company," instead of "King Land Company." This was not an entire change of party defendant, but, so far as the record shows, was a mere correction of the name of the real corporation sued, and was entirely permissible under the authorities.—*Singer Co. v. Greenleaf,* 100 Ala. 272, 14 South. 109; *Lewis Lumber Co. v. Carmody,* 137 Ala. 578, 35 South. 126; *Smith v. Plank Road,* 30 Ala. 650, and other authorities cited under section 5367 of Code of 1907. The appellant's counsel assert in brief that the amendment mentioned amounted to an entire change of party defendant, because, they say, that at the time of the service of the complaint, and at the time of the amendment thereof, there was in fact then in existence a corporate entity by the name of the King Land Company.

The record nowhere shows this to be a fact, and we certainly are not authorized to take judicial knowledge of it, even if it be a fact. Assuming, however, that it is a fact, the situation is not altered. The King Land & Improvement Company, the real defendant—the party really intended to be sued—was the party actually served with the original process, and the party ac-

tually brought into court as a result thereof, and the party who actually defended the case in court upon its merits, under the name "The King Land Company" as given in the complaint originally served. Beyond cavil then, this latter name was a mere misnomer of the real defendant; and it was its duty to itself in the first instance—in order to have afforded record evidence for a plea of res judicata in the future, should it ever be thereafter sued by the right name for the same cause of action—to have filed in this case a plea in abatement, setting up that it was sued by the wrong name; that it is not known and called by that name, and stating what its real name was, so as to have furnished plaintiff, in the language of the old books, a "better writ." The proof of this plea, under the common law, would have put plaintiff to another suit; but under our liberal statutes of amendments he would have been allowed to amend his complaint by correcting the name to meet the plea.—*Savannah, Americus & Montgomery Ry. Co. v. Buford,* 106 Ala. 308, 17 South. 395. The same result in this case was accomplished by a different method, and there is and can be no injury. The fact developed in the course of the trial that there was a mistake in the complaint as to defendant's name, and plaintiff asked and obtained leave to amend his complaint so as to correct the mistake.

An inspection of the complaint and demurrers thereto, which will be set out in the report of the case, will, we think, in the light of the decisions of the Supreme Court of this state, upon a fair analysis of that complaint, show that the lower court did not err in overruling the demurrers.

The rule has been long established in this state, adopted from Chitty on Pleading, that: "When the gravamen of the action is the alleged nonfeasance or

misfeasance of another, as a general rule, it is suffi-
cient if the complaint avers facts out of which the duty
to act springs, and that the defendant negligently per-
formed, or failed to perform, that duty, etc., and it is
not necessary in the complaint to define the quo modo,
or to specify the particular acts of diligence he should
have employed in the performance of such duty. What
the defendant did, and how he did it, and what he
failed to do, are generally better known to the defend-
ant than to the plaintiff; and hence it is that in such
cases a general form of averment is sufficient."—1 Chit.
Pl. 336; *Leach, Harrison & Forwood v. Bush, et al.,* 57
Ala. 145, and numerous authorities cited in the report
of this case in West Pub. Co.'s annotated edition of
Alabama Reports, Book 38, page 68. Probably the
most liberal application of the rule in this state is
found in the case of *L. & N. R. R. Co. v. Marbury Lum-
ber Co.,* 125 Ala. 237, 28 South. 438, 50 L. R. A. 620.
We can detect no substantial difference, in principle,
between the complaint held good in that case and the
one here under consideration. It is true that the opin-
ion in the case was written by a member of the court
who entertained the view, contrary to the majority,
that the complaint there was not sufficient, and that we
have, in that opinion, the benefit of his reasons in sup-
port of his contentions, and are without any expressed
as to those which actuated the majority in the conclu-
sion reached, upholding the complaint, yet some read-
ily occur to us, which are equally applicable to the com-
plaint at hand. In that case the complaint, held good,
merely alleged, in substance, that on a certain date the
defendant negligently set fire to and destroyed seventy
bales of cotton, the property of plaintiff, to his damage,
etc. This, it is observed, alleges the ownership in plain-
tiff of the cotton, and being true, the law put upon all

other persons the duty not to negligently set fire to and destroy it; hence the allegations are sufficient to bring the complaint within the rule announced.

Upon this principle, if, in the present case, the complaint had alleged that the plaintiff was the owner, instead of merely alleging that he was "in possession," of the lands described in the complaint, it would be equally clear that the complaint sufficiently alleged facts out of which would spring the duty upon others not to wrongfully or negligently cause water to flow upon such lands to the damage of plaintiff. The fact that the complaint alleges merely the possession, and not the ownership, of the lands does not alter the case. "Possession," in this connection means more than mere occupancy, and its established import is inconsistent with the idea of a mere holding as a trespasser. The legal idea of possession, though varying according to circumstances, yet, as used in the complaint, embraces the conception, not alone of a physical occupancy and control of the lands described, but also of a right to so occupy and control. It implies a present right to deal with the property at pleasure, and to exclude other persons from meddling with it.—*Sullivan v. Sullivan,* 66 N. Y. 37; *Fuller v. Fuller,* 84 Me. 475, 24 Atl. 946. Black's Law Dictionary defines "possession" as "the detention and control of the manual or ideal custody of anything which may be the subject of property, for one's use or enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place or name." We have examined the second volume of Chitty on Pleading, containing the forms and precedents, and we find that in actions of the character here, the complaints, in every instance, allege "possession," and not "ownership," in plaintiff of the lands injured or damaged.

In *Rathbone v. McConnell,* 20 Barb. (N. Y.) 315—a case of the same class as that here—the court says: "It was obviously not necessary for the plaintiff to prove, in regard to his right or interest, anything further than that he was in possession of the premises at the time of the injury. In Chitty's Pleading it is stated, in regard to injuries to real property, corporeal or incorporeal, that it is now fully settled that in a personal action against a wrongdoer, for the recovery of damages, and not for the land itself, it is sufficient to state in the declaration that the plaintiff, at the time the injury was committed, was possessed of the premises." In the Encyc. Pl. & Pr., vol. 22, p. 1149, in speaking of these specific actions, it says: "As a general rule the declaration need not set forth the plaintiff's title to the premises injured; an averment of possession being sufficient"—citing *Hoare v. Dickinson,* 2 Ld. Raym. Eng. Reps. 1568. Further on in the same volume (page 1160), continuing to deal with the same subject, it says: "In an action of this nature a complaint which shows a right in the plaintiff, a violation of this right by the defendant, and a loss resulting to plaintiff from such violation, is sufficient"—citing in notes authorities to support. The complaint in the present case, in our opinion, meets all these requirements of good pleading. It alleges a right, included in the very term "possession" as there used, in the plaintiff to the lands therein specifically described (whether qualified or absolute is immaterial) a violation of this right by defendant, and resultant injury. We think it, therefore, sufficient.

At common law surface water was regarded as a common enemy, and every landed proprietor had the right, as a general proposition, to take any measures necessary for the protection of his own property

against its ravages; and the damages resulting in such cases to adjoining owners were regarded as damnum absque injuria, affording no cause of action.—*Walker v. New Mexico,* 165 U. S. 593, 17 Sup. Ct. 421, 41 L. Ed. 837; *Chadeayne v. Robinson,* 55 Conn. 345, 11 Atl. 592, 3 Am. St. Rep. 55. This common-law rule yet obtains in many jurisdictions of this country. But not so in this state.—30 Am. & Eng. Ency. Law (2d Ed.) p. 330 et seq . Here our Supreme Court long ago adopted, and has ever since continuously followed, the rule of the civil law. This rule is founded in general on a principle of natural right, as embodied in the maxim: "Aqua currit et debet currere, ut solebat," "Water flows, and as it flows, so it ought to flow," as modified and restrained, under the necessities of advancing civilization, by that other principle that "the rough outline of natural right must submit to the chisel of the mason that it may enter symmetrically into the social structure."—*Hughes v. Anderson,* 68 Ala. 280, 44 Am. Rep. 147. Under this rule, while a person's land is subservient to the adjacent lands of a naturally higher altitude, so far as water is concerned, yet it is subservient only to the extent that nature made it subservient; that is, it is required to receive from such higher lands all and only such water as would naturally flow from them upon it by reason of its natural depression.—*Nininger v. Norwood,* 72 Ala. 277, 47 Am. Rep. 412; *Crabtree v. Baker,* 75 Ala. 92, 51 Am. Rep. 424; *Farris v. Dudley,* 78 Ala. 124, 56 Am. Rep. 24. The law, however, in the interest of progress and development, under some circumstances does permit the owner of the higher lands, to which the lower land is thus naturally subservient, to control and direct, for purposes of proper drainage, by ditches or other artificial means on his own land, the surface water that naturally flows thereon and from it

to the lower land, provided he does not thereby cause more or other water to flow on such lower land than it would naturally receive otherwise, and provided, also, that in so doing, he acts always with a "prudent regard for the welfare of his neighbor." Under no circumstances is he permitted to increase, but under some circumstances he is permitted to distribute, differently from nature, the total quantity of the water flowing naturally from his own to. the lower subservient land, by even "concentrating it and causing it to flow more rapidly and in greater volume upon the lower land."—*Hughes v. Anderson,* 68 Ala. 280, 44 Am. Rep. 147.

. In the case cited, Judge STONE, speaking for the court, said: "Defendant had no right, by ditches or otherwise, to cause water to flow on the lands of plaintiff, which, in the absence of such ditches, would have flowed in a different direction. As to the water theretofore accustomed to flow on the lands of the plaintiff, defendant was not bound to remain inactive. He was permitted to so ditch his own lands as to drain them, provided he did so with a prudent regard for the welfare of his neighbors, and provided he did no more than concentrate the water, and cause it to flow more rapidly, and in greater volume on the inferior heritage. This, however, must be weighed and decided with a proper reference to the value and necessity of the improvement to the superior heritage, contrasted with the injury to the inferior, and even this license must be conceded with great caution and prudence. It is a question for the jury to determine in each particular case, under proper instructions from the court." The brilliant and learned author appreciates that he is asserting a dangerous doctrine, yet one that is essential to promote progress and development. He seeks to prevent its abuse by throwing around it every possible

safeguard; and leaves its application to each case to be determined by whether or not such conditions and circumstances are shown as will justify it under the principles he declraes. He justified the application, and we think properly so, in the particular case he had under consideration, doing so in the interest of agricultural development, and on account of the impelling conditions to that end there shown by the evidence to exist, and the great benefit to the upper and the little detriment sustained to the lower estate thereby. In no other case, however, in this state have we been able to find another announcement or application of the particular doctrine; but the tendency of the other cases, while not dealing with it and not expressly repudiating it, is, at least, to limit and narrow, rather than to enlarge, the right there first conceded in the law of this state.— *Crabtree v. Baker,* 75 Ala. 92, 51 Am. Rep. 424; *Nininger v. Norwood,* 72 Ala. 277, 47 Am. Rep. 412; *Savannah, Am. & M. Ry. Co. v. Buford,* 106 Ala. 312, 17 South. 395; *Drake, Ex., etc., v. Lady Ensley Coal & Iron Co.,* 102 Ala. 506, 14 South. 749, 24 L. R. A. 64, 48 Am. St. Rep. 77; *Farris v. Dudley,* 78 Ala. 124, 56 Am. Rep. 24; *C. of Ga. Ry. Co. v. Windham,* 126 Ala. 552, 28 South. 392; *Council v. Maddox,* 89 Ala. 181, 7 South. 433; *Mayor, etc., v. Jones,* 58 Ala. 654; *Mayor, etc., v. Coleman,* 58 Ala. 570; *Hall v. Rising,* 141 Ala. 433, 37 South. 586; *Ala. Wes. R. R. Co. v. Wilson,* 1 Ala. App. 306, 55 South. 932; *So. Ry. Co. v. Lewis,* 165 Ala. 555, 51 South. 746, 138 Am. St. Rep. 77; *Cen. of Ga. Ry. Co. v. Keyton,* 148 Ala. 675, 41 South. 918; *Sloss-Sheffield S. & I. Co. v. Mitchell,* 167 Ala. 226, 52 South. 69; *Ala. Con. Coal & I. Co. v. Vines,* 151 Ala. 398, 44 South. 377.

From all the cases in this state just cited on the subject, when considered together, we judge the rule to be that the upper landowner has the right to ditch and

drain his own land as he pleases, provided he deos not thereby increase the burden on the lower estate or otherwise injure it. All of them hold that under no circumstances is he permitted to increase that burden to the extent of causing, by such artificial means, more water to flow on such lower land than it would otherwise naturally receive; but *Hughes v. Anderson, supra,* holds that under some exceptional circumstances he is permitted to increase the burden at a particular point by concentrating into one channel and depositing, at that point, in greater volume and with greater rapidity and more injury than nature, water which had theretofore naturally flowed by divers natural channels over a wider area on the same lower estate.

This exceptional right or "license" in the upper proprietor to thus increase the burden of the lower estate, in this particular, must in all cases be exercised, as said, "with a prudent regard for the welfare of his neighbor," and itself arises only under exceptional circumstances and conditions; and as to whether they in fact exist and as to whether, if they do exist, they are sufficient to warrant the exercise of the right or "license," is to be determined by the jury, in each case, under proper instructions from the court, wherein they would be charged with the duty of determining whether the particular drain or ditch, which caused the drainage, was necessary to the improvement of the upper land, whether one elsewhere or in some other method would not have reasonably accomplished the same benefit to the upper estate and resulted in no, or less, damage to the lower, and whether the value of the improvement to the upper land, as a result, so outweighed the detriment to the lower in particular and general good as to authorize it, and whether the upper owner in digging and locating and directing on his own land, the

drain (first, so shown to be necessary) acted with proper care and regard for the rights of the lower owner, such care and regard as would prevent, if he could do so reasonably and consistently with the purposes in view, and if he could not, as would minimize, as far as he reasonably could consistent with such purposes, the damage and injury to the lower estate. All of such matters, if we properly understand the decision in *Hughes v. Anderson, supra,* when the facts are in dispute, as in this case, should be submitted to the jury that they may determine in the first instance whether or not the circumstances and conditions upon which defendant predicates his right or license to act really exist; and, if they find that these circumstances and conditions, as claimed by defendant, do in fact exist, then they must determine, in the second instance, whether they are such as are sufficient to give rise to the right or license claimed weighing, as the jury must, the considerations suggested in *Hughes v. Anderson;* and if they find that they are sufficient, then they must determine, in the third instance, whether in the exercise of such right or license the defendant acted with a prudent regard for the welfare of plaintiff and caused no more damage or injury than was reasonably necessary to the end in view.

Charges Nos. 2, 3, 4, 6, 7, 8, 9, and 10, refused to defendant, were in our opinion properly refused, for each ignored some of the principles declared in *Hughes v. Anderson, supra,* as we understand that case. See, also, *Savannah, Am. & M. Ry. Co. v. Buford,* 106 Ala. 312, 17 South. 395, and cases cited.

The only other charges refused were charges Nos. 1 and 5, and each was also properly refused. Said charge No 5 reads as follows:. "If the plaintiff in this case by the exercise of ordinary care and diligence could have

prevented any damages to his property by the said overflow of water, then your verdict must be for defendant." It is not a correct exposition of the law. While the law is that he cannot recover such damages as he could have prevented by the exercise of ordinary care and diligence, yet the law does not deny him the right to recover such as he could not have prevented by ordinary care and diligence, because he failed to prevent those that he could have prevented by the exercise of such care and diligence. His failure, in such case, visits upon him only the loss of those damages which he could have so prevented, and not the loss of all damages. The charge was, therefore, clearly an incorrect statement of the law, as it sought to deprive him of all damages if he could have so prevented any.

Charge No. 1 reads as follows: "If the jury can reasonably see from the evidence that the plaintiff by the exercise of ordinary care and diligence could have prevented and avoided the damages for which he now sues in this case, then your verdict must be for defendant." The charge was clearly improper. It seems to us to assume that the plaintiff by the exercise of ordinary care and diligence could have prevented the damage for which he now sues, and then to charge only that if the jury can reasonably see this fact from the evidence, they must find for defendant. In other words, the jury's verdict for defendant is to be predicated, not upon their finding from the evidence that the plaintiff by the exercise of ordinary care and diligence could have prevented the damages now sued for, but upon their ability to see from the evidence something, which, in fact, seems to be assumed by the charge to be true, and that is, that the plaintiff by the exercise of ordinary care and diligence could have prevented the damages sued

for. It was at least likely to mislead the jury, and calculated to create the impression stated.

It is elementary that recoverable damages are of two classes, general and special. General damages are such as naturally and necessarily flow from the wrong act; while special damages are such as naturally, but do not necessarily, flow from it. The former do not have to be pleaded in order to give defendant notice that they will be proved at the trial; for they are implied by law, and he is supposed to know, and can prepare to defend as to, all damages that necessarily result from the wrong done. Special damages, however, do have to be set out and claimed in the complaint to the end that the defendant, who could not possibly in all cases anticipate them, may have proper notice of them, and thereby have opportunity to prepare to meet at the trial the proof as to them.—*Lewis v. Paull, et al.,* 42 Ala. 136.

In this case the defendant objected at the trial to the proof by plaintiff of the value of the manure or fertilizer that had been distributed by plaintiff over, preparatory to pitching a crop on, the land submerged by the overflows complained of, and which as a result of the overflowed condition of said land, were lost and rendered valueless to the plaintiff, who was lessee for that year of the lands. The objection was based upon the theory that these were special damages, and had not been claimed in the complaint. They are, of course, special damages, but we do not think the objection to the proof well taken; for they are sufficiently claimed, we think, in the complaint. It alleges, among other things, that plaintiff was in possession of certain lands for the purpose of raising crops, etc., "and that plaintiff was put to great trouble, inconvenience, and expense in or about using, and his efforts to use, said place for the purposes aforesaid." An alle-

gation, as this was, that the plaintiff was put to great expense in or about raising crops, or attempting to do so, is certainly sufficient, we think, to convey to the ordinary mind that this expense came about by and consisted in doing those things which were ordinarily, customarily, and reasonably required by the ends of good husbandry. It is common knowledge that among the practically essential requisites to raising good crops, or to a proper attempt to do so, is the preparation of the soil by, among other things, distributing over the land manures or fertilizers for the purpose of supplying in plant food those elements of it wherein the natural soil is deficient. The allegation, we think, was therefore sufficient to authorize proof of the value of the fertilizers distributed.—*B. R. L. & P. Co. v. Brown,* 150 Ala. 330, 43 South. 342; *Boston, etc., v. Shanly,* 107 Mass. 568; *Ives v. Williams,* 50 Mich. 100, 15 N. W. 33; *B'ham So. R. R. Co. v. Cuzzart,* 133 Ala. 268, 31 South. 979.

· The question propounded by defendant's counsel to plaintiff, when on the stand as a witness in his own behalf, to wit, "If he [plaintiff] did not leave the place because he was delinquent in his rents and forfeited his contract by reason thereof," was properly not allowed over objection of plaintiff's counsel. Whatever motives or reasons may have prompted plaintiff to leave the place could not have deprived him of the right to recover the damages, if any, he sustained, before leaving the place, from defendant's wrongful act, if such it was, in causing the place to be overflowed with water.

The two questions propounded by defendant to the defendant's witness Randolph, and not permitted over objection of plaintiff's counsel, are made the basis here of only one assignment of error. The rule is that if either of the questions was properly disallowed, then the assignment of error must fail, though the other

question was improperly disallowed. To say the least, the questions were each leading, and the lower court cannot be put in error for not permitting them over the objection of plaintiff's counsel.

We find no error in the record, and the case is affirmed.

Affirmed.

### ON APPLICATION FOR REHEARING.

In the original opinion we held that the allegation in the complaint that "plaintiff was put to great trouble, inconvenience, and expense in or about using and his efforts to use said place for the purposes aforesaid," raising a crop, was a general allegation of special damage in that particular broad enough to allow proof, as an item of such expense, of the value of fertilizers bought and distributed by plaintiff over the place for the purpose of raising a crop thereon. We do not wish now to depart from that construction of the comprehensiveness of that language.—16 Ency. Pl. & Pr. p. 390, and cases cited in notes; *Knapp v. Sioux City R. Co.*, 71 Iowa, 41, 32 N. W. 18; *Fox v. Chicago R. Co.*, 86 Iowa, 368, 53 N. W. 259, 17 L. R. A. 289. A defendant can well protect himself against possible surprise at the trial by demanding of plaintiff in advance a bill of particulars of the items of damage embraced within such general averments.—*Mobile & Bir. R. Co. v. Worthington*, 95 Ala. 598, 10 South. 839; 16 Ency. Pl. & Pr. 408; 3 Ency. Pl. & Pr. 523, and cases cited in notes.

However, we are convinced now that we erred in the original opinion, not in the construction of the comprehensiveness of the allegation mentioned, but in assuming that the allegation had reference to expenses in-

[Sutton v. City of Bessemer.]

curred by plaintiff in preparing the land for cultivation before the overflow complained of, and which were·rendered valueless as a result of the overflow; whereas upon proper·analysis of the complaint it appears that this allegation undoubtedly has reference to, and seeks to, claim damages for such expenses· as were incurred or sustained by plaintiff in such preparation after said overflow and as a proximate consequence thereof. The expense for the fertilizers antedated the overflow, and was not, therefore, one of the consequences of it. Hence, the allegation referred to did not embrace such expense, and was not sufficient to permit proof of the value of such fertilizers destroyed by the overflow, and the lower court erred in allowing such proof. To this extent only, the original opinion is modified.

Rehearing is granted, and for the error pointed out the cause is reversed and remanded.

Reversed and remanded.